J-S24020-18

2018 Pa Super 276

| JANICE BERRY, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES D. BERRY | : | No. 1766 MDA 2017 |

Appeal from the Order Entered, October 16, 2017,
in the Court of Common Pleas of Clinton County,
Civil Division at No(s): 1073-2013.

BEFORE: OLSON, J., KUNSELMAN, J., and MUSMANNO, J.

OPINION BY KUNSELMAN, J.:                    **FILED OCTOBER 11, 2018**

In this difficult matter, the octogenarian Appellant, Janice Berry ("Wife"), appeals the equitable distribution of the marital estate she shared with the nonagenarian Appellee, Charles Berry ("Husband"). At the time of the trial, the record indicates that Husband and Wife were married for 66 years and both suffered from dementia; the divorce was litigated through their respective lawyers by their adult children who operated under respective powers of attorney. Neither party appeared for the trial. Their adult children were the only witnesses. At the conclusion of the proceedings, the trial court issued a divorce decree and an equitable distribution award. Wife appealed. Thereafter, on May 16, 2018, Husband died.[1]

On appeal, Wife, represented by new counsel, only challenges the equitable distribution award insofar as the trial court failed to consider that

---

[1] This Court was not informed of the death until July 18, 2018 when it received an application for substitution of a party.

Wife would no longer receive alimony *pendente lite* following the divorce. We do not reach the merits of this claim, however. Instead, we address *sua sponte* the mental capacity of both parties, which was questioned throughout the divorce litigation, but ignored by the trial court. If both parties were still alive, Pennsylvania Rule of Civil Procedure 2056 and public policy would have obligated us to vacate the divorce decree as void and remand for the trial court to determine whether the parties were competent to proceed.[2] Now, we have no choice but to conclude that the combined effect of a void decree and Husband's death abates the divorce litigation, effectively leaving intact the parties' marriage and necessitating that his estate be processed under the Probate Code.

The factual overture is this: The parties, who wed on October 14, 1950, entered the final stages of their lives when divorce litigation commenced. After 63 years of marriage, Wife filed a divorce complaint in August 2013. She ultimately refused to sign an affidavit of consent and withdrew her claim. However, Husband had filed a counterclaim in divorce; so the action proceeded and the parties were divorced pursuant to 23 Pa.C.S.A. § 3301(d). When Wife withdrew her divorce complaint, she also effectively withdrew her claim for alimony. As such, the court did not consider alimony when fashioning its equitable distribution award. That triggered the instant appeal.

---

[2] Rule 2056 discusses the trial court's obligations if it ascertains either party is incapacitated. Despite the fact that the competency of both parties was questioned, the court never inquired further and proceeded with the litigation.

But upon our review of the record, we discovered a much more complicated history. The reason Wife filed her initial divorce complaint was revealed in a letter authored by Wife's power of attorney, daughter, Donna Berry ("Daughter"). Daughter submitted this letter to the court a week before the ultimate hearing in an apparent last-ditch effort to stop the proceedings. The letter explained that in 2013, Husband refused to take his dementia medication, which caused his "irrational and frightening behavior" to return. Testimony revealed that Husband began taking medication for dementia in 2012.

Daughter said Wife filed for divorce to protect her assets; the letter alleged that the parties' sons, including Husband's power of attorney, Jerry Berry ("Son"), were "moving money from one account to another and opening new joint accounts with their names included." The record indicates this sum was $25,000. Husband evidently became abusive, and the court awarded Wife exclusive possession of the marital home; Husband then went to live with one of his sons before ultimately moving into an assisted living facility. Daughter further alleged that Wife regretted filing for divorce, and instead wished she would have had the sons charged with elder abuse.

The litigation had lingered for years. Following Wife's original divorce complaint in 2013, the court ordered discovery and scheduled a hearing for July 2014. But Wife refused to execute an affidavit of consent pursuant to 23 Pa.C.S.A. § 3301(c). After a status conference, the parties again appeared to be largely in agreement, and the court scheduled another hearing for

November 2015.  When the time came for the hearing, Wife again refused to execute an affidavit of consent.  That prompted Husband, through Son, to counterclaim and seek a divorce pursuant to § 3301(d).  Husband's May 2016 counterclaim raised the following issues: equitable distribution; alimony *pendente lite*; and counsel fees, costs and expenses.

Wife filed a praecipe to withdraw her divorce complaint and with it her request for alimony; the trial court granted her request and dismissed her action in October 2016.  The parties reached a temporary agreement in January 2017, whereby Wife's divorce complaint was reinstated.

Husband motioned the court to appoint Wife a guardian *ad litem*.  This motion was evidently denied without prejudice on April 11, 2017, after Daughter furnished documentation of her power of attorney.  The record only contains the order, but not the underlying motion, which could have offered more illumination about the facts supporting the allegations of Wife's incompetency.

Wife, through Daughter, again withdrew her complaint in June 2017.  The trial court stated that it "is not able to comprehend why Wife would withdraw [her] complaint as Husband's complaint and related claims survived while Wife's alimony claim was lost."  ***See*** Trial Court Opinion ("T.C.O"),

8/24/17, at 3. The trial court conducted a status conference on June 27, 2017, a week before the ultimate equitable distribution hearing.[3]

The court learned that Husband was too frail to leave his assisted living facility in Virginia to attend the hearing. The court permitted him to be available by phone, but his counsel indicated that telephonic participation would be similarly impossible because Husband was too hard of hearing. Neither Husband nor Wife was present, in person or by phone, at the hearing, which was finally held on July 5, 2017, nearly three years after it was originally scheduled. Only the children appeared under their respective powers of attorney. Significantly, the record reveals no documentation of Son's power of attorney for Husband. Thus, it seems the court proceeded with the divorce litigation with Son acting as attorney-in-fact for Husband, without any written proof of his authority to do so.[4]

At the hearing, the court immediately acknowledged Daughter's 11th-hour letter seeking to stop the litigation based on Husband's incompetency. Before taking testimony, the trial court stated:

> I just handed each of [the respective lawyers] a filing filed
> by [Daughter], Power of Attorney, which landed on my desk
> this morning. It was filed June 29, 2017. In there,

---

[3] In the reproduced record, this date is, at times, misidentified as July 27, 2017. The correct date of the status conference is June 27, 2017.

[4] We note that Husband signed all of his own legal documents, but his signature appears quite feeble. **See, e.g.,** Affidavit of Consent, docketed August 5, 2015; **see also** "Affidavit Under Section 3301(d) of the Divorce Code," docketed June 9, 2016; **and see** Inventory and Appraisement of Charles Berry, docketed June 8, 2016.

- 5 -

> [Daughter] indicates that [Husband] is incompetent, should not be proceeding, and that all other things that - - [Daughter] indicates this. She is evidently the Power of Attorney for [Wife]. She indicates that [Husband] is incompetent, and [his] Power of Attorney - - Power of Attorney – of if there's more than one person, I can't tell from the letter - - that they're doing this - - forcing this divorce.
>
> The court has been of the opinion throughout this proceeding that the Power of Attorney issue is an orphans' court issue, not a divorce issue. And if anything needs to be done, it needs to be filed in the orphans' court. I'm not going to take any action regarding the filing of the Power of Attorney for Wife in this matter. Are we ready to proceed?

Notes of Transcript ("N.T."), 7/5/17, at 3.

The attorneys then addressed stipulations and proceeded with the rest of the hearing. The court divided the parties' assets equally. At the time of the hearing, Husband was 91 years old and lived in an assisted living center near one of the parties' sons in Virginia. The cost of the facility was $2,750 per month; his income from Social Security and a pension was $1,697.53 per month. Wife was 84 years old and lived with the parties' daughters in the marital home.

In its opinion and order, the trial court stated that there was no testimony about Wife's health problems. However, our review of the record revealed that revealed another letter, dated September 30, 2016, also submitted by Daughter, detailing Wife's own battle with dementia. This letter was filed on October 3, 2016. It was apparently submitted in the hope of setting aside a "nuptial agreement of September 29, 2016." The agreement itself is nowhere in the record, but the letter is identified in the docket as a

"petition to set aside post-nuptial agreement." Daughter stated that the court should set aside the agreement because Wife was so incapacitated that she could not understand the agreement's terms. Daughter noted that the Office of Aging stated in March 2013 – months prior to Wife's initial complaint in divorce - that Wife could not serve as Husband's power of attorney or guardian because she was unable to comprehend Husband's needs. Daughter further stated that she told Wife's then-counsel, C. Rocco Rosamilia, III, Esq., that she – as power of attorney – did not agree with the terms of the September 29, 2016 agreement.

Attached to Daughter's letter is a doctor's note, dated September 30, 2016 – the day after the agreement – written by Thane N. Turner, M.D. Dr. Turner indicated that Wife is his dementia patient. Dr. Turner's note further elaborated that Wife is unable to make decisions on her own, gets distracted easily and has a hard time with concentration as well as comprehension. The doctor concluded that the "patient is incapacitated to the extent that she should not be able to solely sign legal documentation without her power of attorney also agreeing to sign the document." In the physical record, on top of Daughter's letter and the attached doctor's note, is a post-it note that says: "Returned by Judge. 10/4. No action taken." In November 2016, Attorney Rosamilia withdrew his appearance for Wife, and Attorney Mary C. Kilgus, Esq. entered hers.

Although Wife signed the agreement, Husband apparently never sought to have it enforced. The trial court addressed it briefly at the pre-trial status

conference, which was held on the record. *See* N.T., 6/27/17, at 2-4. The post-separation agreement was apparently designed to split the marital assets but leave intact the marriage. Husband's counsel, Meghan Engelman Young, Esq., acknowledged Wife's position that this agreement was invalid because Wife was incompetent when she signed it. With the agreement's validity in question, it evidently transformed to a mere settlement proposal. There was no further discussion on the topic at the status conference. Yet, the court held the equitable distribution trial a week later on July 5, 2017.

In its Pa.R.A.P. 1925(a) opinion, the court noted "there was an extreme lack of evidence concerning Wife's income" at the hearing. *See* T.C.O., at 6. The trial court lamented further: "once again, limited testimony was received concerning [the economic circumstances of each party.]" *Id.*, at 8. The trial court fashioned its equitable distribution scheme to "permit both parties to live out the twilight years of their lives in a somewhat stable condition." *Id.*, at 11. The court noted its dissatisfaction one final time: "This court is extremely disappointed with Wife's counsel's failure to address the items of marital property, along with the values in the memorandum submitted by Wife, along with the extremely limited testimony at the final hearing in this matter." *Id.*

After the hearing, Wife retained new counsel, her third. On appeal, Wife presents a single question: "Was the equitable distribution scheme of the lower court fair in accordance with [the] law?" Wife's Brief, at 4. Neither brief mentioned the competency of the parties or lack thereof. Before we can

address the merits of the question raised on appeal, we must address the glaring issue of the parties' competency.

We begin by noting our limitations. Our Supreme Court has consistently held that "an appellate court cannot reverse a trial court judgment on a basis that was not properly raised and preserved by the parties." *See Steiner v. Markel*, 968 A.2d 1253, 1256-1257 (Pa. 2009) (citing *Danville Area Sch. Dist. v. Danville Area Educ. Ass'n*, 754 A.2d 1255, 1259 (Pa. 2000); *Commonwealth v. Boros*, 620 A.2d 1139, 1140 (Pa. 1993); *Fisher v. Brick*, 56 A.2d 213, 215 (Pa. 1948)).

"Where the parties fail to preserve an issue for appeal, the Superior Court may not address that issue *sua sponte."* *Id.* (citing *Knarr v. Erie Ins. Exch.,* 723 A.2d 664, 666 (Pa. 1999) (holding that the trial court exceeded its proper scope of review by raising an issue that was not preserved by appellate review); *Wiegand v. Wiegand,* 337 A.2d 256, 257–58 (Pa. 1975) (holding that an appellate court may not litigate for the parties)). Generally, when an appellate court decides issues *sua sponte*, it exceeds its proper appellate function and unnecessarily disturbs the processes of orderly judicial decision making. *Id.*, 968 A.2d at 1260 (citing *Wiegand*, 337 A.2d at 257).

Our Court has also observed the general rule dictating appellate restraint. "We are not free to ignore [the] complete absence of objection. […] Parties may waive rights, even due process rights and other rights of constitutional magnitude." *Tecce v. Hally*, 106 A.3d 728, 732 (Pa. Super. 2014); *see Green v. Green*, 69 A.3d 282, 288 (Pa. Super. 2016); *see also*

*Tyler v. King*, 496 A.2d 16, 24 (Pa. Super. 1985). And we have employed this restraint even when, for example, an error-ridden divorce proceeding was "so fundamentally flawed" that it "offends fundamental fairness and demands correction." *Tecce*, 106 A.3d at 732.

To illustrate: in *Tecce*, the trial court made factual findings and credibility determinations without taking testimony, without receiving evidence, and without allowing cross-examination. Shockingly, neither party objected to this procedure. On appeal, we acknowledged the plainness of the trial court's errors, but we could not correct them. Instead, we were constrained to find waiver and affirmed the trial court accordingly.

Precedent aside, we recognize the Rules of Appellate Procedure also preclude us from considering issues not preserved for our review. *See, e.g.,* Pa.R.A.P. 302; Pa.R.A.P. 2117; Pa.R.A.P. 2119. However disastrous the litigation below, in most situations we are loathed to interject our hand to alter its dubious trajectory.

Yet, the factual scenario of this case provides a rare exception that demands us to invoke the courts' inherent duty to protect the rights of potentially incompetent parties. Under the circumstances described above, we cannot ignore the grave questions of whether the Husband was competent enough to bring a proper divorce action and whether Wife was competent enough to defend it. We find the trial court erred by not conducting such proceedings to ascertain these answers, wrongly professing that it was the job of the orphans' court.

Although our procedural disposition is unusual, our Supreme Court has announced our inherent authority, in the interest of justice, to raise the issue of the parties' competency *sua sponte*. **See Benz v. Heckman**, 2 A.2d 857 (Pa. 1938). In **Benz**, the plaintiff sustained a personal injury in a beauty parlor. At the start of the trial, the defendants' counsel had brought to the attention of the court that one of the alleged tortfeasors had since been declared mentally incompetent by a physician; this status was not formally adjudged, however. **Id.**, at 858. The trial proceeded anyway, and the jury returned a verdict in the plaintiff's favor. **Id.** Our Supreme Court set aside the judgment and ordered a new trial. The Court held: "[e]ven in the absence of an adjudication of [incompetency][5], a procedure cannot be approved which would permit a verdict to be rendered against a person who is [mentally incompetent] … and consequently unable to appear and defend." **Id.** The Supreme Court further acknowledged that while complete legal proof of incompetency was not demanded or produced, the statement by counsel that the defendant had been declared mentally incompetent "was at least sufficient to invite some form of judicial investigation…." **Id.**

The Court determined that protection could have been accorded either by continuing the case until a proceeding [to determine competency] might be initiated, or by the appointment of a guardian *ad litem*. **Id.** Because that did not occur, the judgment was set aside and a new trial was awarded. The

---

[5] The Court used the ancient nomenclature "lunacy."

- 11 -

Supreme Court analogized the facts of its case to those cases involving minors: "It is not sufficient that the minor appears in person or by an attorney[; u]nless a guardian *ad litem* has been appointed, a verdict, judgment or decree will be set aside and a new trial [] awarded." ***Id.***, at 859, n.1. (Citations omitted).

For our purposes, however, most critical was the case's disposition. The allegedly incompetent tortfeasor *was not* an appellant. The appeal was brought by her co-defendant husband, who also was sued as a co-owner and operator of the beauty parlor. The Supreme Court held: "It is true that she [the tortfeasor-wife] is not here [as] an appellant, but, if insane, she was unable either to appear or to authorize an appeal on her behalf, and it is the ***duty of this court, as it was that of the trial court,*** to protect her rights under the circumstances." ***Id.***, at 859 (emphasis added). [6]

Here, we likewise have a duty to protect the parties' rights under such similar, irregular circumstances. In the instant matter, not only were allegations of the parties' dementia made throughout the litigation, but the issue was also placed front and center at the start of the hearing. Incompetency allegations were made once more in each party's post-trial memorandum. Similar to ***Benz***, no formal adjudication of incompetency was

_____

[6] Notably, the Supreme Court did not leave the verdict intact pending an adjudication of competency. Instead, the judgment was set aside for a new trial so that the allegedly incompetent party's interests may be properly represented and safeguarded. ***Benz***, 2 A.2d, at 859.

- 12 -

made prior to the hearing. Also like **Benz**, if the parties were incompetent, then their incompetency prevented them from appearing and participating in the hearing. And like **Benz**, if incompetent, they would be unable to properly navigate this appeal and consequently unable to preserve the issue of their competency on their own. Therefore, we distinguish this case, and those involving competency questions, from those requiring us to find waiver when a party fails to raise an issue.

**Benz** confirmed our authority to reach this disposition under Pennsylvania law. However, we observe the clarity and succinctness of a similar holding in the South Carolina Court of Appeals, our fellow intermediary appellate court. **See South Carolina Dept. of Social Services v. Roe**, 371 S.C. 450, 639 S.E. 2d 165 (Ct. App. 2006). **Roe** concerned a termination of parental rights proceeding. There, although the appellant did not challenge trial court's conclusion that termination served the minor's best interests, the appellate court reviewed the issue *sua sponte* nevertheless. The Court of Appeals of South Carolina explained:

> An exception to the rule that an unpreserved issue will not be considered on appeal exists where the interests of minors or incompetents are involved. […]**The duty to protect the rights of minors and incompetents has precedence over procedural rules** otherwise limiting the scope of review and matters affecting the rights of minors can be considered by this court *ex mero motu.* [7]

---

[7] *"Ex mero motu"* is Latin for "on his mere motion." The phrase was formerly used in reference to a court, as an equivalent of *sua sponte* or *on its own motion.* Black's Law Dictionary (10th ed. 2014).

***Roe***, 639 S.E.2d, at 172 (citations omitted)(emphasis added). We determine that Pennsylvania jurisprudence adheres to the same public policy.

Having determined that our duty to protect the rights of incompetents takes precedence over the usual rules of appellate procedure, we now address the questions of the parties' competency and their children's authority to proceed on their behalf, as powers of attorney, in the divorce and equitable distribution action.

Across the United States, the majority rule is that no incompetent person may initiate a divorce. ***See*** Matthew Branson, *Guardian-Initiated Divorce*: *A Survey*, 29 J. Am. Acad. Matrim. Law. 171, 172-173 (2016). But as attitudes toward divorce changed in the 1960s and 1970s, and as the concern about elder abuse grew with the aging population, states slowly began adhering to a minority rule. ***Id.*** The minority rule generally allows guardian-initiated divorces. ***Id.*** Pennsylvania employs a hybrid approach. ***Id.***

In our Commonwealth, there is no *per se* rule that an adjudicated "incompetent" is prohibited from initiating a divorce action. ***Syno v. Syno***, 594 A.2d 307, 311 (Pa. Super. 1991). Indeed, our Rules of Civil Procedure governing actions for divorce anticipate that an incompetent can be a plaintiff in a divorce action. ***Syno***, 594 A.2d at 311. Rule 1920.12 provides: "…[T]he plaintiff shall set forth in the complaint as to the cause of action of divorce or for annulment (1) the names of the plaintiff and defendant and, ***if either party is*** a minor or ***incompetent***, a statement to that effect and the name and address of such party's guardian, if any.…" Pa.R.C.P. 1920.12. (Emphasis

- 14 -

added). However, it is also settled Pennsylvania law that an adjudged incompetent may prosecute a civil action for divorce *only* by means of a guardian or guardian *ad litem*, and, thus, a divorce decree which was obtained without the assistance of a court appointed guardian or guardian *ad litem* is void. **Syno**, 594 A.2d 307.

In **Syno**, the plaintiff-husband initiated a divorce action, but he had previously been declared an incompetent. **Id.**, at 310. As such, we determined that Mr. Syno could not maintain a divorce action in his own name, but rather had to be represented by a guardian or guardian *ad litem*. **Id.**; **see also** Pa.R.C.P. 2053 ("Guardian to Represent Incapacitated Person")[8], Pa.R.C.P. 2056(a) ("Procedure When Incapacity of a Party is Ascertained")[9].

---

[8] (a) A plaintiff who is an incapacitated person shall be represented by a guardian or by a guardian *ad litem* who shall supervise and control the conduct of the action in the plaintiff's behalf.

(b) A defendant who is an incapacitated person shall be represented by a guardian. If the defendant has no guardian, or if the guardian is not served with process in this Commonwealth and does not voluntarily appear in the action, the defendant shall be represented by a guardian *ad litem*. The guardian or guardian *ad litem* shall supervise and control the conduct of the action in the defendant's behalf.

> *Note:* See Rules 2056(a) and 2057, as to the procedure and effect of an action brought by an incapacitated plaintiff who is not represented by a guardian or a guardian *ad litem*.

[9] (a) If, at any time during the pendency of the action, the court shall find that the plaintiff is an incapacitated person, who is not

- 15 -

Moreover, Pennsylvania defines an "incompetent" as a person who, because of infirmities, is unable to manage property **or** lacks the capacity to make reasonable decisions concerning his person. **See Syno**, 594 A.2d at 311 (emphasis original); **see also** 20 Pa.C.S.A. § 5501; **and see** Pa.R.C.P. 2051. As we previously determined, "[i]t is certainly possible that an 'incompetent' may be unable to manage his estate and, yet, be capable of making reasonable choices concerning his personal life." **Syno**, 594 A.2d at 311**.**

In accordance with this principle, in **Syno***,* we vacated the divorce decree as void and remanded back to the trial court to determine whether the incompetent plaintiff was: 1) capable of exercising reasonable judgment as to personal decisions; 2) understood the nature of the action; and 3) was able to express unequivocally a desire to dissolve the marriage. **Id.** We further ordered the trial court to appoint a guardian *ad litem* for the petitioning husband and to conduct a more thorough hearing on the husband's capacity to make reasonable decisions concerning his person, his understanding of the

_____

represented in the action by a guardian or a guardian *ad litem*, the court shall either

> (1) forthwith appoint a guardian *ad litem*; or

> (2) stay all proceedings and enter an order directing that the plaintiff be represented in the action by a guardian within such reasonable time as the court shall direct. Notice of such order shall be given to such persons and in such manner as the court may direct. If a guardian is not appointed within the specified time, the court shall appoint a guardian *ad litem*.

nature of a divorce action, and his desire to maintain such an action. *Id.*, 594 A.2d at 313-314.

We note two pointed distinctions between the seminal *Syno* case and the instant matter. First, each of our parties was purportedly "represented" by respective powers of attorney (although we note no proof of record that Son had power of attorney for Husband or that such power of attorney authorized the filing of a divorce action). The second distinction is that neither of these parties had been previously adjudged incompetent. Neither difference, however, changes our determination that the trial court erred when it proceeded with a hearing and entered an order without first ascertaining the competency of parties.

We have never decided whether a power of attorney can prosecute, maintain or defend a divorce action on behalf of the principal, even when the terms of power of attorney authorize litigation generally. And so we have not decided what happens when that power of attorney is an adult child of one of, or here, both of the parties.[10] Absent guidance from our Supreme Court, we must adhere to our prior decisions and their application of the pertinent Rules of Civil Procedure. Rule 2053 ("Guardian to Represent Incapacitated Person") provides that *both* the plaintiff and the defendant, if incapacitated, must be represented by a guardian or a guardian *ad litem*. Pa.R.C.P. 2053(a); (b).

---

[10] We note that if the power of attorney is an adult child of one or both of the parties, an appointment of that child as guardian or guardian *ad litem* in a divorce proceeding may present a conflict of interest.

Rule 2051 defines guardian as "the guardian or other fiduciary **appointed by a court** of competent jurisdiction for the person or estate of an incapacitated person." (Emphasis added).

We can reasonably infer that the trial court believed powers of attorney were sufficient to act on behalf of the parties in this matter. The court denied, without prejudice, Husband's motion for the appointment of a guardian *ad litem* for Wife, and instead ordered Daughter to furnish her power of attorney. This was an error.

*Syno, supra,* makes clear that only a party with a guardian or guardian *ad litem* may **bring** a divorce action. Moreover, precedent and the Rules of Civil Procedure also mandate that a guardian or guardian *ad litem* is necessary to **defend** an action for divorce. *See Schwarzkopf v. Schwarzkopf*, 107 A.2d 610 (Pa. Super. 1954); *see also* Pa.R.C.P. 2056(c)–(e) ("Procedure When Incapacity of a Party is Ascertained").[11]

---

[11] (c) If, at any time during the trial of an action, the court shall find that the defendant is an incapacitated person who is not represented in the action by a guardian or guardian *ad litem*, the court shall either

> (1) forthwith appoint a guardian *ad litem*, or
> (2) stay all proceedings until the defendant is represented in the action by a guardian. If the defendant has a guardian, the guardian shall be given notice of the pendency of the action in the manner provided by subdivision (b) of this rule. If the defendant is not represented by a guardian in the action within such reasonable time as the court shall direct, the court shall appoint a guardian *ad litem* for the defendant.

(d) If, at any time after the conclusion of the trial, or after the entry of a finding, verdict or judgment against a party from whom relief is sought, the

In some respects, **Schwarzkopf** is a vestige of prior jurisprudence; while still applicable, it predates the no-fault revolution in divorce law. In that case, the husband sought to divorce his wife on the fault-based ground of "indignities." **See** 23 Pa.C.S.A. § 3301(a)(6). Specifically, his legal position was that grounds for divorce were established because his wife refused to have sexual intercourse. **Schwarzkopf**, 107 A.2d, at 611. The case is relevant for our purposes because the wife, who was committed to a hospital due to her incompetency, was not appointed a guardian *ad litem*. Although the wife had counsel, her counsel only represented the financial interests of her estate. This was not enough. The trial court explained its duty to protect the interests of an alleged incompetent party in divorce:

> Our practice cannot be so lacking in its protection of the helpless that no duty is imposed upon those conducting the case to see that [the incompetent defendant-wife] is adequately represented and her rights protected not only in theory but in fact. In this connection[,] see Procedural Rule [Pa.R.C.P.] 2053(b)[("Guardian to Represent Incapacitated Person")].
>
> Even had the [plaintiff-husband] made out a good case of indignities and met the burden…nevertheless, we would

---

court shall find that such party was incapacitated at the time of the entry of such finding, verdict or judgment and was not represented in the action by a guardian or a guardian *ad litem*, the court may vacate the finding, verdict or judgment and may enter an order in the nature of a procedendo.

(e) A finding of incapacity shall be based either on evidence presented to the court in which the action is pending, or on an adjudication of incapacity entered by a court of competent jurisdiction.

> have remanded the case so that the [defendant-wife] could have been properly and adequately represented before the [] court below.

*Schwarzkopf*, 107 A.2d, at 614-615.[12]

Instantly, it was not enough that Husband and Wife each had powers of attorney and respective divorce lawyers. Precedent and procedural rules have deemed this representation to be an inadequate safeguard. Indeed, there was some testimony that suggested the attorneys in this matter did not know precisely who their clients were.[13] As the record made clear, Wife's counsel only represented her financial interests as to the equitable distribution, but did not advocate Wife's positions regarding the divorce, which were explicitly articulated on the eve of the trial by Daughter's June 29, 2017 letter: Wife did not consent to the divorce pursuant to 23 Pa.C.S.A. § 3301(c); Wife's defense to Husband's counterclaim pursuant to § 3301(d) was that he was not competent to bring the action.

We conclude that Pennsylvania law does not allow an incompetent to bring a divorce action without the court confirming whether the incompetent retains the mental capacity to make reasonable decisions concerning his

---

[12] Notably, even if Husband would have succeeded on the merits of the divorce action, the result would had to have been set aside because the procedural safeguards were not employed.

[13] Wife's trial counsel, Mary Kligus, Esq., referred to *both* Wife and Daughter as her clients. *See* N.T., 6/27/17 at 4. Husband's former counsel, Attorney Robert O'Connor, evidently told Son he needed to obtain a power of attorney in order to continue his representation of Husband in the litigation. *See* N.T., 7/5/17 at 100.

person, his understanding of the nature of a divorce action, and his desire to maintain this action. We further hold that a power of attorney cannot prosecute, nor defend, a divorce action on behalf of an incompetent principal. That role is reserved exclusively for a court-appointed guardian or guardian *ad litem*.

The penultimate question we must decide is whether the trial court erred by not resolving the competency of both parties after the issue was raised, when no prior incompetency adjudication was made as to either of them. Our precedent similarly makes clear that the court erred when it proceeded with the hearing before determining the competency of the parties.

Although no court previously adjudicated either party incompetent, the **Benz** decision mandates that, under certain circumstances, "some form of judicial investigation" is necessary, especially when the trial court accepts the assertions by counsel that a party is an incompetent. **Benz**, **supra**, 2 A.2d 858. Upon allegations of incompetency, it is the duty of both the appellate court and trial court to protect the rights of the alleged incompetent. Although such a situation is rare, it is not without precedent. **See Savage v. Savage**, 736 A.2d 633 (Pa. Super. 1999); **see also Manley v. Manley**, 164 A.2d 113, 121 (Pa. Super. 1960).

**Savage** concerned a bifurcated divorce and other issues ancillary to our analysis. Noteworthy, however, is trial court's procedure following the concerns voiced by both attorneys that Mrs. Savage was not mentally competent to agree to a proposed settlement, nor was she competent to

proceed with the divorce litigation generally. The trial court addressed the competency of Mrs. Savage before hearing the merits of the case.

> The court, in its continuing concern here and in attempt to resolve this matter, appointed Attorney Ralli Holden to review the proposed settlement, with her sole purpose being to satisfy herself, and thereafter the court, that it was a fair and appropriate settlement with regard to Mrs. Savage, or not so.
>
> Before evaluating its fairness, however, after speaking with [the] wife, Attorney Holden also expressed concerns about [the] wife's competence. […] The court therefore stayed all proceedings, including the Master's, and ordered Robert Sadoff, M.D., a forensic psychiatrist, to perform a psychiatric evaluation of [the] wife. […] However, Dr. Sadoff concluded that [the] wife was legally competent[.] […] Upon receipt of this report, the court found the competency matter resolved, allowed the Master's hearings to recommence, and scheduled a hearing on bifurcation.

*Savage*, 736 A.2d at 638.

In another vestige, *Manley v. Manley*, 164 A.2d 113 (Pa. Super. 1960), we ruled that a wife's alleged incompetency was not a proper affirmative defense in a divorce action based on the fault-based ground of "adultery." *See* 23 Pa.C.S.A. § 3301(a)(2). There, this Court found Wife's allegation that she was incompetent to be meritless, and that incompetency could not be asserted as a defense in the divorce. Nonetheless, we affirmed the duty of both counsel and the trial court to protect the rights of allegedly incompetent parties.

> If the counsel (and she had many)…thought [the wife] was of unsound mind, it was [counsel's] duty to call this belief to the attention of the court, and ask for the appointment of a guardian, and if the master or the court thought she was of unsound mind, a guardian should have been appointed. See Pa.R.C.P. 2056(c)[-](d).

- 22 -

*Manley*, 164 A.2d at 121.

Although *Manley* is nearly 60 years old, the same Rule of Civil Procedure are in effect today. *See* Pa.R.C.P. 2056(c)-(e). As these decisions make clear, both the trial court and the parties' counsel have an obligation to ascertain the competency of the parties when the circumstances call it into question, regardless of whether a party has been previously adjudicated an incompetent.

As noted above, in *Benz*, the tortfeasor-wife was not present at the trial and her counsel indicated that she was not competent. The Supreme Court ruled that the trial court erred when it proceeded without first appointing Wife a guardian *ad litem*, even though she had not been formally adjudged incompetent. *Benz*, 2 A.2d at 858.

In *Savage,* counsel for both sides relayed their concerns to the court, who then appointed the wife a guardian *ad litem* even though Wife had not been previously adjudged incompetent and even though she was ultimately determined to be competent. *Savage*, 736 A.2d, at 638. And while the trial court in *Manley* did not appoint a guardian *ad litem* upon Wife's assertion of the insanity defense, it was clear in that case that the allegation of incompetency was merely a ploy. Even under those circumstances, however, we reaffirmed that the court *must* appoint a guardian *ad litem* if the court has reasons to suspect a party has an unsound mind. *Manley*, 164 A.2d at 121.

Here, Daughter's October 2016 letter – complete with attached doctor's note – outlined Wife's alleged mental deficiencies. This letter is identified in

the record as Wife's "Petition to Set Aside Post-Nuptial Agreement." At that juncture, Wife's counsel and the court were both under an obligation to trigger proceedings to ascertain Wife's competency. Daughter's June 29, 2017 letter, filed a week before the trial, was similarly sufficient to put a halt to the proceedings to determine Husband's competency. Husband's condition was explicitly discussed at trial. *See* N.T., 7/5/17, at 3. Although we are not privy to what happened behind the scenes, we can deduce that the competency question loomed in the background for some time, as evidenced by the trial court's stated, albeit misguided, belief "*throughout this proceeding* that the power of attorney issue is an orphans' court issue, not a divorce issue." ***See id.*** (Emphasis added). The court's decision to proceed with the trial without first ascertaining the parties' competency was erroneous. ***See*** Pa.R.C.P. 2056(c).

Moreover, the court, at the conclusion of the trial, ordered the parties to submit post-trial memoranda of law. Husband's counsel, Attorney Young, *admitted* in her pre-trial memorandum that Husband was "frail and ***demented*** and in otherwise poor health." ***See*** Husband's Memorandum, dated August 4, 2017. (Emphasis added.) Wife's counsel, Attorney Klingus, similarly stated that the parties "both suffer dementia-related illness." ***See*** Wife's Memorandum, dated August 4, 2017. Rule of Procedure 2056(d) provides that the court still could have taken remedial action at that time. The court's failure to do so was an error.

Upon each allegation that that one of these parties was not competent to proceed, the trial court should have continued the proceedings to immediately resolve that question. While the attorneys also mistakenly represented to the court that they had the ability to litigate the divorce through the children's respective powers of attorney, we are stunned that the hearing was even conducted in the parties' absence. **See** N.T.*,* at 12; 60.

Had Husband not died during the pendency of this appeal, we would have remanded for the trial court to conduct a more thorough hearing on the Husband's capacity to determine, in accordance with **Syno***, supra,* whether Husband possessed the mental capacity to make reasonable decisions concerning his person, his understanding of the nature of a divorce action, and his unequivocal desire to maintain this action. **See also** Pa.R.C.P. 2056(d). Had the trial court determined Husband was competent enough to proceed with the divorce action, then Wife's competency would have had to be determined so her rights could have been adequately protected as well. We intended to further order the trial court to appoint Wife a guardian *ad litem*, given that there was nothing in the record to suggest she had already been appointed one. Now, given Husband's death, this remand instruction is moot.

Nevertheless, we are still constrained to vacate the divorce decree and equitable distribution award in either event. **See Syno**, 594 A.2d, at 314. Because the competency of Husband had been reasonably called into question, and because he had not been appointed a guardian *ad litem*, we

conclude that decree is void. Because neither parties' competency had been established, we conclude that the trial court's equitable distribution was premature.

While we are cautious not to speculate into the ramifications this decision will have on Husband's estate, we must clarify our holding insofar as it concerns the abatement of the divorce action.

Pennsylvania courts have long held that an action in divorce abates upon the death of either party. **Yelenic v. Clark**, 922 A.2d 935, 938 (Pa. Super. 2007) (citing, **inter alia**, **Estate of Pinkerton v. Pinkerton,** 646 A.2d 1184 (Pa. Super. 1994)). The rationale for this principle is that an action in divorce is personal to the parties and upon the death of either party, the action necessarily dies. **Id.** The primary purpose of divorce is to change the relation of the parties; and, when the death of a party occurs, that purpose can no longer be achieved because the martial relationship has been ended by death. **Id.** (Citing **Drumheller v. Marcello**, 532 A.2d 807, 808 (Pa. 1987).)

In 2005, however, the Divorce Code was amended to provide an exception: a divorce action will not abate upon the death of a party, so long as the grounds for divorce have been established as provided in 23 Pa.C.S.A. § 3323(g)("Grounds established."). **Id.; see also** 23 Pa.C.S.A. § 3323(d.1) ("Death of a party."). If the § 3323(g) grounds have been established, then, although no divorce decree will be granted posthumously, the parties' economic rights and obligations are determined under the Divorce Code rather

than the elective share provision of the Probate Code. *See Yelenic*, 922 A.2d,

941-942; *see also Gerow v. Gerow*, 962 A.2d 1206 (2008).

Thus, in the instant case, where Husband's divorce action was brought

under § 3301(d), the parties' economic rights and obligations would be

determined under the Domestic Relations Code if a representative of

Husband's estate could prove that grounds for divorce were established

pursuant to § 3323(g)(3) prior to his death:

> In the case of an action for divorce under section 3301(d), an affidavit has been filed and no counter-affidavit has been filed or, if a counter-affidavit has been filed denying the affidavit's averments, the court determines that the marriage is irretrievably broken and the parties have lived separate and apart for at least one year at the time of the filing of the affidavit.

23 Pa.C.S.A. § 3323(g).

Since Husband filed an affidavit under § 3301(d), it would appear at first

blush that this matter fits within the § 3323(g) statutory exception, thereby

allowing the estate to be processed under the Divorce Code. But because we

have determined, pursuant to *Syno, supra*, that the outstanding question of

Husband's incompetency and failure to appoint a guardian *ad litem* **voids** the

divorce decree, we must conclude that the statutory exception is inapplicable

and that Husband's death abates the divorce action.

Our learned colleague concurs in part, but dissents in favor of an

evidentiary hearing, pursuant to Pa.R.C.P. 2056(d), to retroactively determine

Husband's competency. In other words, the dissent would apply the *Syno*

holding and proceed as if Husband was still alive. The dissent argues that such a hearing is analogous to a will contest. We disagree.

Procedurally, the dissent would leave the divorce decree intact and give the trial court the ability to vacate it if necessary. This does not conform to either the Supreme Court's decision in **Benz** (where the judgement was set aside), or our decision in **Syno** (where we voided the divorce decree). **See Benz v. Heckman**, 2 A.2d 857 (Pa. 1938); **see also Syno v. Syno**, 594 A.2d 307 (Pa. Super. 1991). In both cases, a new trial was necessary. In the interim, neither the original judgment nor decree was left intact pending a resolution on the parties' competency.

The reason for this procedure is the intent of Rule 2056. The rule ensures that incapacitated parties are represented and safeguarded throughout the proceeding. In divorce proceedings, we have applied this rule to mean that an allegedly incompetent petitioner must be appointed a guardian or guardian *ad litem* and must be "capable of exercising reasonable judgement as to personal decisions, understands the nature of the action and is able to express unequivocally a desire to dissolve the marriage." **See Syno, supra,** 594 A.2d at 311*.* Absent legislative involvement or guidance from our Supreme Court, we decline to expand Rule 2056(d) – and, by proxy, the abatement exception under § 3323(g) – to include a posthumous guardian appointment and posthumous evidentiary hearing on whether a petitioner was competent enough to bring a divorce action.

We do not assume Husband was too incompetent to bring a divorce. Rather, we conclude that the death prevents the inquiry into the competency question. As **Syno** makes clear, the proper disposition in these competency cases is that the divorce decree is **void** when the petitioner has not proven he is sufficiently competent. And because Husband had died before he could establish his competency, the court cannot rely on his § 3301(d) affidavit to process the parties' economic rights and obligations under the Divorce Code.

As a final matter, we vacate the order granting Son's application for substitution of successor. The order was appropriate during the pendency of this appeal, per § 3323(d) ("Substitution for deceased party."). But now that we vacate the divorce decree and settle the question of abatement, the substitution is moot.

We do not make this decision lightly. Although attitudes have evolved, divorce is still a creature of statute. Gone are the days where the state placed significant impediments upon those who sought to dissolve their marriage without first showing that one party was at fault. **See** Pa.C.S.A. § 3301(c)-(d). But the law still recognizes that in any divorce case, the Commonwealth is an interested third party, and courts must take up the investigation of any fact, the determination of which is fundamental and material to the issue involved. **See Cortese v. Cortese**, 63 A.2d 420, 422 (Pa. Super. 1949) (citing **Bonomo v. Bonomo**, 187 A. 222 (Pa. Super. 1936)). Our inherent authority compels us to guard our process against divorce actions perpetuated for and against those whose competency is reasonably called into question.

- 29 -

Regrettably, Husband's death forecloses the inquiry into whether he was competent to fulfill his purported wishes.

Divorce decree vacated. Equitable distribution order vacated. Order granting Application for Substitution of Successor vacated. Jurisdiction relinquished.

Judge Musmanno joins in this Opinion.

Judge Olson files a Concurring and Dissenting Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/11/2018