J-S18035-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF CHARLES CROWDER, III, AN INCAPACITATED PERSON | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: CHARLES CROWDER III | : : : : : : : | |
| | : | No. 1877 EDA 2020 |

Appeal from the Order Entered September 4, 2020
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s): No. 2020-X1906

| | | |
|---|---|---|
| ESTATE OF CHARLES CROWDER, III, AN INCAPACITATED PERSON | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: CHARLES CROWDER III | : : : : : | |
| | : | No. 1878 EDA 2020 |

Appeal from the Order Entered September 4, 2020
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s): No. 2020-X1484

BEFORE:   PANELLA, P.J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED AUGUST 20, 2021**

In these consolidated appeals, Appellant, Charles Crowder, III
(Crowder), challenges orders of the Orphans' Court Division of the Court of
Common Pleas of Montgomery County (Orphans' Court) that dismissed his

_____

[*] Retired Senior Judge assigned to the Superior Court.

petition to nullify a health care power of attorney as moot. For the reasons set forth below, we vacate those orders and remand for further proceedings.

On June 22, 2020, 1700 Pine Street Operations, LLC d/b/a Norriton Square Nursing and Rehabilitation Center, the nursing home where Crowder was residing (the nursing home), filed a petition for an adjudication that Crowder was incapacitated and for appointment of guardian of Crowder's estate that was docketed at No. 2020-X1484. On July 30, 2020, Crowder and Sonya M. Pendleton (Pendleton), who held a February 2020 power of attorney for Crowder, filed a petition, docketed at No. 2020-X1906, seeking to nullify a 2017 health care power of attorney in which Crowder had appointed his daughter, Tierra Williams (Williams), as his health care agent (Williams' health care POA). In that petition, Crowder and Pendleton alleged, *inter alia*, that Williams was refusing to communicate with Crowder and should be removed as Crowder's health care power of attorney because she was not acting in his best interests. Petition to Nullify Health Care POA ¶¶18, 22.

The Orphan's Court scheduled a hearing on the guardianship petition for September 4, 2020 and a hearing on the petition to nullify Williams' health care POA for September 14, 2020. The Orphan's Court appointed counsel to represent Crowder at the guardianship hearing and a guardian *ad litem* as "the investigative arm of the [c]ourt," N.T. at 127, and appointed psychologist Kenneth R. Carroll, Ph.D., to perform an independent medical examination and cognitive assessment of Crowder.

In its guardianship petition and at the September 4, 2020 hearing, the nursing home sought only appointment of a guardian of Crowder's estate and not a guardian of his person. Petition for Adjudication of Incapacity and to Appoint Guardian at 8; N.T. at 20, 122. At the September 4, 2020 guardianship hearing, eight witnesses testified or gave statements under oath and subject to cross-examination: Dr. Carroll; Dr. deButts, a physician who had treated Crowder at the nursing home; Crowder; a representative of the nursing home; Williams; the guardian that the nursing home proposed, who is not related to Crowder or his family (the third-party guardian); and Crowder's sister and niece. Crowder was represented at the hearing by both his counsel on the petition to nullify Williams' health care POA and his court-appointed counsel. N.T. at 4. Although Pendleton was given notice of this hearing, she did not appear.

Dr. Carroll testified that Crowder has been diagnosed and is under treatment for schizophrenia and opined based on his examination of Crowder that Crowder was unable to manage his finances and needed a guardian of his estate. N.T. at 29-30, 39-41. Dr. Carroll testified that Crowder's basic cognitive functions were intact and that he can make some decisions, but that Crowder was unable to make complicated decisions and unable to understand his finances and pay his bills on a consistent basis. *Id.* at 31-32, 39-40, 42-45. Dr. deButts testified as an expert only in internal medicine and not as an expert on Crowder's mental capacity. *Id.* at 14-16, 19. The representative

of the nursing home who testified was not familiar with the payment of Crowder's bills and did not testify concerning Crowder's mental condition or abilities. *Id.* at 63-67.

Williams testified that she was able to manage Crowder's finances and requested that she be appointed as guardian for his estate. N.T. at 71, 73-74, 77-81. Williams testified that she last spoke to Crowder in early February 2020, approximately seven months before the hearing. *Id.* at 71. Williams and Crowder's sister and niece asserted that Pendleton had taken advantage of Crowder, taken money from him that he needed for his own care, and was not paying his bills. *Id.* at 82-84, 106-09, 112-14. The third-party guardian testified only to her abilities and willingness to fulfill guardianship duties if appointed and the fact that she was unrelated to Crowder. *Id.* at 86-91.

Crowder testified that he did not feel that he needed a guardian and did not want a guardian appointed. N.T. at 6, 96, 100-01. In addition, Crowder repeatedly stated that he did not want Williams or the other family members at the hearing to have a power of attorney for him and testified that he believed that Williams had had him committed in the past and was keeping him in the nursing home against his will. *Id.* at 4-7, 99-100, 103-04.

Following the testimony and statements at the hearing, the Orphan's Court found that Crowder was incapacitated, unable to manage his financial affairs, and in need of a guardian of his estate. N.T. at 122-25; 2020-X1484 Orphan's Court Order, 9/8/20. The court concluded that an independent

guardian was the more appropriate guardian, at least initially, because of the strained relationship between Crowder's family and Pendleton. N.T. at 123-25. The Orphan's Court accordingly issued an order, entered on September 8, 2020, adjudging Crowder to be totally incapacitated and appointing the third-party guardian as plenary permanent guardian of Crowder's estate. 2020-X1484 Orphan's Court Order, 9/8/20. In this guardianship order, the Orphan's Court vacated Pendleton's February 2020 financial power of attorney, pursuant to 20 Pa.C.S. § 5604(c)(3). 2020-X1484 Orphan's Court Order, 9/8/20, at 2.

In addition, the Orphan's Court ruled that Williams' health care POA would remain in effect and that the petition to nullify Williams' health care POA was moot because Pendleton no longer had standing to pursue that petition. N.T. at 122-23, 126. The court therefore entered orders in both the guardianship case and the health care POA case on September 4, 2020 dismissing the petition to nullify Williams' health care POA as moot and canceling the September 14, 2020 hearing on that petition. 2020-X1484 Orphan's Court Order, 9/4/20; 2020-X1906 Orphan's Court Order, 9/4/20.

On September 16, 2020, the court-appointed counsel who had represented Crowder at the guardianship hearing petitioned to withdraw. The Orphan's Court granted the petition to withdraw and on September 28, 2020, appointed Crowder's present counsel to represent him. 2020-X1484 Orphan's Court Order, 9/18/20; 2020-X1484 Orphan's Court Order, 9/28/20. On

October 2, 2020, Crowder, represented by his court-appointed counsel, filed timely appeals in both the guardianship case and the health care POA case. In his notices of appeal, Crowder appealed only the Orphan's Court's September 4, 2020 orders dismissing the petition to nullify the health care POA and did not appeal the guardianship order. 2020-X1484 Notice of Appeal; 2020-X1906 Notice of Appeal.

In these appeals, which this Court consolidated *sua sponte*, Crowder asserts that he has standing to appeal the September 4, 2020 orders and litigate the petition to nullify Williams' health care POA, that the Orphan's Court erred in dismissing the petition to nullify Williams' health care POA as moot, and that the Orphan's Court erred in drawing an adverse inference against Pendleton from her failure to appear at the September 4, 2020 guardianship hearing. The guardian *ad litem* has filed a brief arguing that the Orphan's Court's September 4, 2020 orders should be affirmed. No brief has been filed in these appeals by the guardian of Crowder's estate or by the respondents against whom the petition to nullify Williams' health care POA was filed, the nursing home and Williams.

We agree with Crowder that he has standing. The issue of standing is a question of law over which our review in plenary and *de novo*. **Rellick-Smith v. Rellick**, 147 A.3d 897, 901 (Pa. Super. 2016), **appeal granted on other issue**, 240 A.3d 104 (Pa. 2020). A "party who is aggrieved by an appealable order … may appeal therefrom." Pa.R.A.P. 501. A party is

aggrieved and has standing if he has a substantial, direct, and immediate interest in the outcome of the litigation at issue. **Rellick-Smith**, 147 A.3d at 901; **In re Estate of Rosengarten**, 871 A.2d 1249, 1256 (Pa. Super. 2005). Crowder, who expressed at the guardianship hearing that he did not want Williams to make decisions for him, N.T. at 4-7, 103-04, clearly has a substantial, direct, and immediate interest in the outcome of his petition to nullify Williams' health care POA, which sought to remove her as his health care decisionmaker, and a substantial, direct, and immediate interest in these appeals of the September 4, 2020 orders dismissing that petition.

The Orphan's Court and the guardian *ad litem* contend that Pendleton no longer has standing to pursue the health care POA litigation because her sole interest in that litigation was based on her February 2020 power of attorney and the guardianship order vacated that power of attorney. **See In the Matter of Brown**, 507 A.2d 418, 419 (Pa. Super. 1986) (holder of prior written agreement with incapacitated person who was not related to him had no standing to challenge incompetency adjudication or appointment of guardian). The critical issue here, however, is whether Crowder has standing, not whether Pendleton has standing. The petition to nullify Williams' health care POA was not filed solely by Pendleton; it was filed by both Crowder and Pendleton. These appeals were filed by Crowder, not by Pendleton. Indeed, the counsel that represents Crowder in these appeals is his court-appointed

counsel, not the attorney who represented him and Pendleton in the Orphan's Court.

The guardian *ad litem* also argues that Crowder lacks standing to maintain the petition to nullify Williams' health care POA and these appeals because he has been adjudicated incapacitated and a guardian has been appointed. This argument fails for two reasons. First, the Orphan's Court adjudicated Crowder unable to manage his financial affairs, not incompetent to make all decisions concerning his medical care, and appointed only a guardian of Crowder's estate, not a guardian of his person. 2020-X1484 Orphan's Court Order, 9/8/20, at 1. The issue in the petition to nullify Williams' health care POA and these appeals is Crowder's right to make medical decisions and determine who can act for him with respect to medical care, not control over Crowder's finances.

More fundamentally, an adjudication of incapacitation and appointment of a guardian does not deprive the incapacitated person of all legal rights to challenge who may serve as guardian. **Rosengarten**, 871 A.2d at 1256-57 (incapacitated person had standing to participate in proceedings concerning disposition of her assets represented by counsel of her choice and to challenge the propriety of disposition of assets and request a different guardian). In **Rosengarten**, this Court specifically rejected the argument that an incapacitated person does not have an interest in litigation over her property and who should act as her guardian and "should be denied the opportunity to

express her voice in the courts." *Id.* at 1257. This Court concluded such a denial of standing "disregards the language of the applicable statute that is designed specifically to ensure that the incapacitated person's desires are honored to the fullest extent possible unless those desires will harm her." *Id.*

The cases cited by the guardian *ad litem* do not support his claim that Crowder lacks standing. Only one of the cases that the guardian *ad litem* cites on this issue, **Berry v. Berry**, 197 A.3d 788 (Pa. Super. 2018), involved any issue of the effect of an individual's competency on his ability to file or litigate an action. In **Berry**, this Court held that an incapacitated person cannot bring a divorce action without a court determination concerning his mental capacity and understanding of the nature of the divorce action and that a divorce action cannot be brought or defended by a power of attorney acting on behalf of an incapacitated person. **Id.** at 800. Nothing in **Berry** suggests that an adjudication of incapacity deprives the incapacitated person of the right to be heard on the issue of who is appointed as his guardian or who is permitted by the guardianship court to make decisions on his behalf.

With respect to the merits issues in these appeals, Crowder argues that the Orphan's Court erred in dismissing the petition to nullify Williams' health care POA as moot because the guardianship order did not resolve the issue of who has authority to make medical decisions for Crowder. We agree.

Mootness, like standing, is a question of law subject to this Court's plenary, *de novo* review. **Commonwealth v. Mauk**, 185 A.3d 406, 409 (Pa.

Super. 2018). A case may be dismissed as moot where, as a result of events that occurred after the case was brought, the party who brought the action no longer has standing, no actual case or controversy exists between the parties, or the court cannot enter an order that would have any legal force or effect. **M.B.S. v. W.E.**, 232 A.3d 922, 927 (Pa. Super. 2020); **T.A. v. Allen**, 868 A.2d 594, 600-01 (Pa. Super. 2005); **J.S. v. Whetzel**, 860 A.2d 1112, 1118 (Pa. Super. 2004).

The Orphan's Court held, and the guardian *ad litem* argues that the petition to nullify Williams' health care POA was moot because the guardianship order voided Pendleton's power of attorney and divested her of standing to litigate the validity of Williams' health care POA. This conclusion, however, is invalid because Crowder was also a petitioner in the health care POA action and, for the reasons discussed above, the guardianship order did deprive Crowder of standing.

The guardian *ad litem* also argues that the petition to nullify Williams' health care POA was moot because the guardianship order resolved all of the claims for relief in that petition. This contention is without merit. As has been discussed above, the Orphan's Court in its guardianship order appointed only a guardian of Crowder's estate and did not appoint a guardian of his person. 2020-X1484 Orphan's Court Order, 9/8/20, at 1. While the Orphan's Court did provide in that order that Williams' health care POA remained in effect, that ruling was a preservation of the status quo and a clarification that the

appointment of the guardian for Crowder's estate did not affect the health care POA issue, not a ruling on the petition to nullify Williams' health care POA, which was scheduled for a separate hearing that had not yet been held. *Id.* at 3; N.T. at 122-23, 126. The Orphan's Court specifically stated at the hearing:

> [T]his petition was only filed for a guardian of the estate, which is [Crowder's] financial guardian. There is no such petition filed at this time for a guardian of the person. The power of attorney that is currently in place for Ms. Williams will stay in full force and effect until such time there is either a conversion to a guardian [or] a request to remove Ms. Williams, but there is nothing that will change that at this time.

N.T. at 122-23. The Orphan's Court thus did not rule on merits of Crowder's petition to nullify Williams' health care POA or dismiss it because the issues that it raised had fully been resolved. Rather, the record is clear that the court dismissed the health care POA action without a hearing based on its erroneous conclusion that Pendleton's lack of standing made it moot. *Id.* at 126; Orphan's Court Opinion at 6-7.

In his remaining issue, Crowder argues that the Orphan's Court erred in drawing an adverse inference against Pendleton from her failure to appear at the September 4, 2020 hearing. That issue, however, is not before us in these appeals. The Orphan's Court drew this adverse inference in deciding the guardianship action and appointing the third-party guardian as guardian of Crowder's estate, rather than Pendleton or a family member. N.T. at 123-25; Orphan's Court Opinion at 6-7. Crowder did not appeal the guardianship

- 11 -

order; he appealed only the September 4, 2020 orders dismissing the petition to nullify Williams' health care POA. 2020-X1484 Notice of Appeal; 2020-X1906 Notice of Appeal. The dismissal orders were based, as discussed above, on the Orphan's Court's erroneous conclusion that the guardianship order's voiding of Pendleton's POA rendered the petition moot, not on any inferences concerning any party or witness.

Because the petition to nullify Williams' health care POA was filed by Crowder and not solely by Pendleton and the guardianship order did not deprive Crowder of standing or resolve Crowder's request to remove Williams as his health care decisionmaker, the guardianship order did not moot the petition to nullify Williams' health care POA. The Orphan's Court therefore erred in dismissing that petition. We accordingly vacate the Orphan's Court's September 4, 2020 orders and remand that case for the Orphan's Court to hold a hearing on Crowder's petition to nullify Williams' health care POA and adjudicate that petition on the merits.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/2021