J-A13045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ENRICO DILUCENTE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LISA DILUCENTE | : | |
| | : | |
| Appellant | : | No. 1138 WDA 2023 |

Appeal from the Order Entered September 15, 2023
In the Court of Common Pleas of Westmoreland County
Civil Division at 872 of 2019-D

| | | |
|---|---|---|
| ENRICO DILUCENTE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LISA DILUCENTE | : | |
| | : | |
| Appellant | : | No. 1139 WDA 2023 |

Appeal from the Order Entered September 15, 2023
In the Court of Common Pleas of Westmoreland County
Civil Division at 872 of 2019-D

BEFORE: OLSON, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: July 30, 2024**

In this divorce action, Lisa DiLucente (Appellant), appeals from the

orders which denied her exceptions and resolved the parties' economic claims,

notwithstanding the death of her husband, Enrico DiLucente (Husband), while the action was pending.[1]  We affirm.

At the time of the equitable distribution hearing, the parties had been married for nearly 20 years.  N.T., 2/1/23, at 11.  Husband was 86 years old, and Wife was 62 years old.  *Id.* at 11, 63.  The trial court recounted the following case history:

> On May 23, 2019, Husband[] filed a Complaint in Divorce. On March 22, 2021, Husband filed his 3301(d) affidavit stating that the parties separated on May 2, 2019[,] and alleging that the parties lived separate and apart for over one year.  On April 7, 2021, []Appellant[ ] filed a 3301(d) counter-affidavit where[] she did not oppose entry of a divorce decree[], but [indicated] that economic claims are pending and remain unresolved.
>
> On September 14, 2020, [Appellant]'s counsel filed a First Request for Production of Documents.  On February 17, 2021, [Appellant]'s counsel filed a motion for continuance, requesting that the parties appear in person for an All Counts Settlement Conference because Husband could not hear, and he had trouble understanding things spoken over the phone in previous court hearings.  [Appellant]'s counsel did not question Husband's

---

[1] A divorce decree was never entered.  Generally, issues in divorce cases are not reviewable until after the entry of a divorce decree.  *See e.g.*, *Fried v. Fried*, 501 A.2d 211 (Pa. 1985).  This case presents an exception because statutory grounds for divorce were established before Husband died.  *See* 23 Pa.C.S. § 3323(d.1) (if a party dies during "divorce proceedings, … and grounds have been established…, the parties' economic rights and obligations arising under the marriage shall be determined under [the Divorce Code]"); *see also Shell v. Shell*, 304 A.3d 401, 408 (Pa. Super. 2023).  In 2022, the orphans' court appointed Husband's daughter to represent his interests in the divorce action, but the trial court did not change the case caption.  Thus, the appeal caption reflects the trial court's caption.  *See* Pa.R.A.P. 904(b)(1) ("The parties shall be stated in the caption as they appeared on the record of the trial court at the time the appeal was taken").

competency at this time, and Husband did not appear in [c]ourt for presentation of the motion.

On April 14, 2021, Husband filed a Petition for Bifurcation and Economic Claims. The [c]ourt entered an Order stating that grounds for divorce had been established as both parties acknowledged they had been living separate and apart for over one year, and a hearing on bifurcation was scheduled. The bifurcation hearing was continued by consent and ultimately never occurred, as the parties continued through traditional channels to an equitable distribution hearing.

On January 20, 2022[,] Husband presented a motion to appoint Master in Divorce. [Appellant]'s current counsel entered his appearance on this same day, and for the first time, raised the issue of Husband's competency. [Appellant]'s counsel was instructed to make his request regarding Husband's [c]ompetency in writing, which he did by filing [Appellant]'s Preliminary Objections on March 21, 2022, the same day that a Master's pretrial conference was to take place. Husband then filed a Response to Preliminary Objections and brief in Support on April 8, 2022, and [Appellant] filed an Affidavit in Support of Preliminary Objections to Complaint and Brief in Support of Preliminary Objections to Complaint on May 22, 2022.

In [Appellant]'s Affidavit, she references a partial transcript from a June 3, 2019 Protection from Abuse hearing, as well as a transcript from an Allegheny County Support Hearing held on July 12, 2019. The [c]ourt notes that both of these cases, while tangential to this divorce proceeding, are not before this [c]ourt.

On January 28, 2022, Husband's [d]aughter, Doreen Angotti, was appointed Husband's legal guardian for the sole purpose of litigating this divorce action.[2] On June 16, 2022, this [c]ourt filed a Memorandum and Order of Court denying [Appellant]'s Preliminary Objections.

_____

[2] Ms. Angotti initiated the guardianship action in orphans' court. **See In re: Enrico DiLucente**, No. 65-21-3281. Following a hearing, the orphans' court ruled that Husband was incapacitated, and appointed Ms. Angotti as his guardian "for purposes of handling all legal matters relating to [the] divorce proceeding." Order, 1/28/22, at 1-2.

The parties ultimately proceeded to a [] hearing regarding equitable distribution, counsel fees, and costs and expenses. On May 9, 2023, the [Master] filed her report and proposed Order of Court. On May 30, 2023, [Appellant] filed Exceptions to the [] Report and Proposed Order. Husband [] passed away on July 25, 2023. After briefing and oral argument, the [c]ourt denied [Appellant]'s exceptions and entered [two corresponding orders].

Trial Court Opinion (TCO), 1/8/24, at 2-3.

One of the trial court's orders denies Appellant's exceptions and states that the "Master's recommended Order of Court shall be entered via separate Order, with the slight modification allowing [Appellant] to remain in the marital residence pending its sale." Order, 9/15/23 (single page).

The other order states:

1. The marital residence located at 135 Sunset Drive, Pittsburgh, Pennsylvania 15235 shall be immediately listed for sale through Darlene Vukovich, Realtor, (724) 834-2580. Both parties shall cooperate fully with the realtor. So long as [Appellant] keeps the house in a clean and sellable condition, she may remain in the marital residence until the closing for the sale of said residence. Upon the sale of the marital residence, any remaining net proceeds shall be distributed as follows:

a. [Appellant] shall receive the first share of net proceeds to compensate her for the marital credit card debts in the total amount of $13,552.90. (This amount represents the following amounts: Amazon.com Synchrony Bank $1,357.11, Barclaycard Visa $906.93, and First National Bank of Omaha Visa $11,288.86).

b. The remaining net proceeds, after the payment of the amounts above, shall be distributed so that Husband receives 50% plus the amount of $1,527.25 and so that [Appellant] receives 50% less the amount of $1,527.25.

2. The marital white GMC truck shall also be immediately sold. [Appellant] and/or her legal counsel on her behalf shall ensure that the title to that truck is available for transfer. Both parties shall immediately cooperate to sell that truck to either Auto Barn (where it has been sitting for the past two years), or if Auto Barn is not willing to purchase the same at fair market value, then to

We Buy Any Car, Greensburg location. Husband and/or his power of attorney shall make the vehicle available for sale forthwith and shall arrange for the sale of the truck, keeping [Appellant] and/or her legal counsel apprised as to the sales price and providing copies of all sales documents. The net proceeds from the sale of that truck shall be divided equally between the parties.

3. Each party shall retain such household goods, furnishings, guns, tools, and personal property as are currently in that party's possession, free of any claim by the other party.

4. Neither party is awarded counsel fees. All fees for the Domestic Relations Hearing Officer have been addressed in order that the costs are equally divided.

5. Neither party is awarded any alimony.

6. Husband shall pay to the Hearing Officer the sum of $1,527.25 within ten (10) days.

Order, 9/15/23, at 1-2.

On September 22, 2023, Appellant filed timely notices of appeal from both orders. This Court consolidated the appeals *sua sponte*. The trial court subsequently ordered Appellant to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b). Appellant timely complied, and the trial court issued a responsive opinion.

Wife presents seven issues for review:

1. Whether the [t]rial [c]ourt [e]rred in failing to dismiss [Husband's] Divorce Complaint?

2. Whether the [t]rial [c]ourt erred in failing to have a [competency] hearing as required by **Berry v. Berry**, 197 A.3d 788, 804 (Pa. Super. 2018)?

3. Whether the trial [c]ourt erred in allowing the divorce case to continue even though the Guardian never entered her appearance on behalf of [Husband]?

4. Whether the Master erred in finding the date of separation was May 2, 2019 and not May 22, 2019[,] and whether the [Master]

- 5 -

and the [c]ourt erred in finding that the marital debt was $13,552.90 instead of $22,424.97?

5. Whether the [c]ourt erred by not finding [that Husband's] tax issues stemmed from his earlier self-employment[?]

6. Whether the matter should have been remanded to the Master for a new equitable distribution order after Husband passed away on July 25, 2023?

7. Whether the [Master] and the [trial c]ourt erred in [not] finding that the martial residence and/or 100% of the equity in the marital residence should have been awarded solely to [Appellant]?

Appellant's Brief at 4-6.

*Issues 1 and 2:  Husband's Competency*

Appellant's first two issues involve Husband's competency to litigate the divorce action.  Appellant claims the trial court erred by failing to dismiss Husband's divorce complaint and/or conduct a competency hearing pursuant to **Berry v. Berry**, 197 A.3d 788, 795 (Pa. Super. 2018) (holding that trial court erred by failing to conduct proceedings to determine whether the elderly husband "was competent enough to bring a proper divorce action and whether [the w]ife was competent enough to defend it").

Appellant states that "no evidence was presented to show [Husband] was competent in March of 2021[, when he filed his affidavit in divorce,] or May of 2019[, when he filed the divorce complaint]."  Appellant's Brief at 11. Appellant maintains the trial court erred in finding "she should have raised this issue prior to filing Preliminary Objections in 2022."  **Id.** at 12.  According to Appellant, "both the trial court and the parties' counsel have an obligation to ascertain the competency of the parties when the circumstances call it into

question, regardless of whether a party has been previously adjudicated an incompetent." *Id.* (citing **Berry**, 197 A.3d at 801).

Appellant claims she raised the issue of Husband's competency on three occasions: at a protection from abuse (PFA) action Husband initiated in May 2019; at a support hearing Appellant initiated in Allegheny County in July 2019[3]; and when she retained Paul Miller, Esquire, in February 2020. *Id.* at 12-13. Appellant argues "it was not [her] failure to raise the issue, but the [c]ourt's failure to follow up with her assertions or those of her counsel." *Id.* at 13. Appellant states that Husband "was given an opportunity to produce evidence [of competency]. He did not. Thus, the [divorce] complaint and or the 3301[(d)] [a]ffidavit should have been dismissed or voided." *Id.* at 14. Appellant further asserts that the trial court's failure to make a competency determination, followed by Husband's death, compels remand "with directions to discontinue the action and set aside the equitable distribution award." *Id.* at 15.

Husband argues that Appellant has failed "to properly object [and] preserve [the competency issue] before the trial court." Husband's Brief at 11. He accurately observes that Appellant "makes no reference to anywhere in the record where an objection was raised that would otherwise properly preserve this issue." *Id.* at 17. Husband notes that he filed the divorce complaint in May 2019, and his affidavit in March 2021, but Appellant did not

---

[3] On September 5, 2019, the trial court denied Appellant's request to transfer jurisdiction to Allegheny County. Order, 9/5/19.

challenge his competency until 2022. *Id.* at 19. Also, Husband emphasizes that Appellant cannot rely on evidence from "outside of the divorce action," *i.e.*, the PFA and Allegheny County cases, to support her allegations.[4] *Id.* Lastly, Husband asserts that this Court's decision in *Berry* "is replete with significant factual distinctions from the instant case." *Id.* at 24. Husband emphasizes that he "was represented by a guardian appointed by the Orphans' Court once his competency did decline to the point where he could no longer participate [in the divorce action]." *Id.* at 26. Thus, Husband concludes he was "afforded all the protections and representation that was denied to the parties in *Berry*." *Id.*

We agree that *Berry* is not on point. At the time of their divorce trial, Mr. and Mrs. Berry had been "married for 66 years[,] both suffered from dementia[, and] the divorce was litigated through their respective lawyers by their adult children[,] who operated under respective powers of attorney." *Berry*, 197 A.3d at 791. Further, "[n]either party appeared for the trial[, and t]heir adult children were the only witnesses." *Id.* The trial court entered an award of equitable distribution and divorce decree in October 2017. Mrs. Berry appealed. While the appeal was pending, in May 2018, Mr. Berry died. *Id.*

This Court declined to review the merits of Mrs. Berry's economic claims. Instead, we explained that we were compelled to *sua sponte* address "the mental capacity of both parties, which was questioned throughout the divorce

---

[4] Husband nonetheless opines that evidence from the PFA and Allegheny County cases "support Husband's lucidity" at the time. *Id.* at 20.

litigation, but ignored by the trial court." ***Id.*** We referenced Pa.R.Civ.P. 2056, which addresses a trial court's obligations if it ascertains that either party is incapacitated. ***Id.*** at 791-92. We observed that "[d]espite the fact that the competency of both parties was questioned, the [trial] court never inquired further and proceeded with the litigation." ***Id.*** at 792 n.2. We also inferred that "the trial court [erroneously] believed powers of attorney were sufficient to act on behalf of the parties in this matter." ***Id.*** at 799. Ultimately, this Court found the trial court erred by conducting divorce proceedings and entering an equitable distribution order and divorce decree without first ascertaining the parties' competency. ***Id.*** at 798. We stated:

> [E]ach of [the] parties was purportedly "represented" by respective powers of attorney (although we note no proof of record that [the s]on had power of attorney for [the h]usband or that such power of attorney authorized the filing of a divorce action). [Also,] neither of these parties had been previously adjudged incompetent.

***Id.***

> In addition, we explained:
>
> If both parties were still alive, Pennsylvania Rule of Civil Procedure 2056 and public policy would have obligated us to vacate the divorce decree as void and remand for the trial court to determine whether the parties were competent to proceed. Now, we have no choice but to conclude that the combined effect of a void decree and Husband's death abates the divorce litigation, effectively leaving intact the parties' marriage and necessitating that his estate be processed under the Probate Code.

***Id.*** at 791-92 (footnote omitted). This Court found "it was not enough" that the parties "each had powers of attorney and respective divorce lawyers." ***Id.***

at 800. Because Mr. Berry's competency "had been reasonably called into question, and because he had not been appointed a guardian *ad litem*," we concluded the divorce decree was void, and the award of equitable distribution was premature. ***Id.*** Therefore, this Court vacated the divorce decree and equitable distribution order. ***See id.*** at 802 (stating "we are cautious not to speculate into the ramifications this decision will have on [the h]usband's estate").

This case is distinguishable from ***Berry***. Unlike Mr. Berry, Husband participated in the divorce action for nearly three years, and his mental capacity was not "questioned throughout the divorce litigation." ***Id.*** at 791. Appellant raised the issue of Husband's competency after Ms. Angotti initiated guardianship proceedings in orphans' court. As the trial court explained:

> [Appellant] did not file Preliminary Objections to the Divorce Complaint[, raising Husband's competency,] until March 21, 2022, well after both parties filed 3301(d) affidavits and grounds for divorce had been established. **The [trial c]ourt was not even alerted to the fact that Husband may be incompetent until January of 2022, when [Appellant]'s current counsel appeared at motions court**. …
>
> [Appellant] incorrectly relies on the case of ***Syno v. Syno***, 594 A.2d 307 (Pa. Super. 1991)[, which] stands for the premise that an incompetent person cannot prosecute a divorce. However, the ***Syno*** case involves a party who was determined to be incompetent before the Divorce Complaint was filed. Additionally, the opposing party did not delay in filing an Answer and New Matter alleging that the plaintiff did not have capacity to sue[,] due to the fact that he had been determined incompetent five months prior to initiating the divorce action. ***Id.*** at 309.
>
> In the instant case, [Appellant] failed to raise an objection to Husband's Complaint in Divorce or his 3301(d) affidavit. [Appellant] cites two instances in which she raised Husband's

- 10 -

> capacity as an issue. Neither … occurred in this divorce litigation. The June 3, 2019 hearing was part of a PFA hearing before [a different judge], and the second case was an Allegheny County [s]upport [h]earing in which [Appellant] was the Plaintiff, and [Appellant] alleged that Husband was still working. It is unknown whether [Appellant] pursued the allegation of capacity further in either case.

TCO at 3-4 (emphasis added). The trial court noted that Appellant and her counsel "were present for the [g]uardianship hearing," and concluded that the orphans' court's appointment of Ms. Angotti as Husband's guardian, "is exactly the remedy provided … in … *Berry*." *Id.* at 5. As the Master observed, the "record and the testimony reflected that Husband was found to be incapacitated and his adult daughter, Doreen Angotti, was permitted to proceed … on behalf of her father" at the equitable distribution hearing. Report, 5/8/23, at 2.

The record supports the trial court's rationale. Appellant did not raise Husband's competency before the trial court until 2022. The trial court "was not even alerted to the fact that Husband may be incompetent until January 2022, when [Appellant's] counsel appeared at motions court." TCO at 3-4; *Berry*, 197 A.3d at 801 (holding "the trial court and the parties have an obligation to ascertain the competency of the parties **when the circumstances call it into question**") (emphasis added). The orphans' court appointed Ms. Angotti as Husband's guardian in January 2022, and she appeared on Husband's behalf at subsequent proceedings, including the equitable distribution hearing held on February 1, 2023. Accordingly, there is

no basis for Appellant's request "to discontinue the action and set aside the equitable distribution award."  Appellant's Brief at 15.

*Issue 3: Ms. Angotti's Entry of Appearance*

In her third issue, Appellant claims the trial court erred "in allowing the divorce case to continue even though the Guardian never entered her appearance" for Husband.  ***Id.*** at 5.  Appellant argues:

> Because the Guardian was never part of the case and [Husband] had died but no personal representative had substituted its [*sic*] appearance at the time of the brief, the oral argument and the final orders, the Master's recommendations should be void along with all documents and [the] order rendered thereafter.  The incapacitated person, and the deceased person, were never rented [*sic*] as required by ***Berry***.

***Id.*** at 16.

The record indicates that Ms. Angotti entered her appearance of record on September 5, 2023, more than a year after the orphans' court appointed her to serve as Husband's guardian in the divorce action.  However, as Husband observes, Appellant's "novel claim that the guardian appointed to prosecute the divorce on Husband's behalf was required to become a party herself is unsupported by any case law and should be considered waived."  Husband's Brief at 16 (citing Pa.R.A.P. 2119(a)).  Husband asserts:

> [Appellant] makes no reference to anywhere in the record where an objection was raised that would otherwise properly preserve this issue.  Per Pa[.]R.A.P. 2119(e), "where under the applicable law[,] an issue is not reviewable on appeal unless raised or preserved below."  Husband was alive through the litigation of the divorce; he followed the proper protocols and the dictates of the prevailing case law in obtaining a guardian to complete the litigation he had commenced to protect and pursue his interests.

- 12 -

Upon either of these bases, Wife has waived this issue, and her contentions are without merit.

*Id.* at 17-18.

We agree Appellant's third issue is waived. "When an appellant cites no authority supporting an argument, this Court is inclined to believe there is none." ***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 781 (Pa. Super. 2015) (citing, *inter alia*, Pa.R.A.P. 2119(a) and (b) (requiring an appellant to discuss and cite pertinent authorities)). Moreover, "[w]e shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem the issue waived." ***Commonwealth v. Cannavo***, 199 A.3d 1282, 1289 (Pa. Super. 2018) (citation omitted).

Waiver notwithstanding, we would conclude that the issue lacks merit. As the trial court explained:

It is factually correct that the guardian, Doreen Angotti, did not formally enter her appearance with the Prothonotary until September 2023, after Husband had passed. However, all parties involved were aware that Ms. Angotti had been appointed Guardian for the purposes of litigating this divorce. [Appellant] and her counsel were present and in fact participated in the hearing [before the orphans' court] on January 28, 2022, when Ms. Angotti was appointed guardian. Additionally, Ms. Angotti appeared at all proceedings after she was appointed guardian, and appeared on Husband's behalf at the equitable distribution proceeding. No formal objection was made to her presence on the record, and as previously stated, [Appellant] and her counsel were aware that she was the guardian for Husband.

Furthermore, [Appellant] cites no authority stating that the divorce proceedings must be suspended or stayed for failure of the guardian to formally enter her appearance.

- 13 -

TCO at 5.

In sum, there is no merit to Appellant's first three issues pertaining to the validity of the divorce proceedings. We thus consider Appellant's next four issues concerning the award of equitable distribution.

Appellant's equitable distribution argument is not "divid[ed] into as many parts as there are questions to be argued," with headings "in distinctive type or in type distinctively displayed—the particular point treated therein[.]" *See* Pa.R.A.P. 2119(a); *see also* Appellant's Brief at 16-19. Nonetheless, we address the issues as presented in Appellant's statement of questions. *Id.* at 5-6.

> *Issues 4 — 7: Equitable Distribution:*
>
> *(4) date of separation & marital debt; (5) Husband's tax issues & self-employment; (6) remand following Husband's death; and (7) the marital residence.*

Appellant correctly observes that her "remaining issues are basically related to whether the [t]rial [c]ourt followed the law and properly considered the equitable distribution factors and whether the decision is supported by the record." *Id.* at 16-17.

"Our scope of review in equitable distribution matters is limited. Awards of alimony, counsel fees, and property distribution are within the sound discretion of the trial court and will not be disturbed absent an error of law or abuse of discretion." *Smith v. Smith*, 749 A.2d 921, 924 (Pa. Super. 2000). In particular,

we are guided by the fact that trial courts have broad equitable powers to effectuate [economic] justice and we will find an abuse of discretion only if the trial court misapplied the laws or failed to follow proper legal procedures. [Further,] the finder of fact is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below.

We do not evaluate the propriety of the distribution order upon our agreement with the court[']s actions[,] nor do we find a basis for reversal in the court's application of a single factor. Rather, we look at the distribution as a whole, in light of the court's overall application of the [23 Pa.C.S.[] § 3502(a)] factors [for consideration in awarding equitable distribution]. If we fail to find an abuse of discretion, the [o]rder must stand.

**Harvey v. Harvey**, 167 A.3d 6, 16-17 (citation omitted).

*Issue 4: Date of Separation & Marital Debt*

Appellant claims the trial court "agreed the Master used the wrong date for the separation. By using the earlier date, the Master excluded certain debts and found the amount of marital debt to be less than if she had used the later date." Appellant's Brief at 17. As this is Appellant's entire argument, the issue is waived.

An appellant is required to support an argument with pertinent analysis, including discussion of relevant authority and facts of record. **See** Pa.R.A.P. 2119. This Court has explained:

When an appellant cites no authority supporting an argument, this Court is inclined to believe there is none. **See** Pa.R.A.P. 2119(a) and (b) (requiring an appellant to discuss and cite pertinent authorities); **Commonwealth v. Antidormi**, 84 A.3d 736, 754 (Pa. Super. 2014) (finding issue waived because the appellant "cited no legal authorities nor developed any meaningful analysis").

- 15 -

***Reyes-Rodriguez***, 111 A.3d at 781. It is not this Court's role to develop an appellant's argument. ***Commonwealth v. Beshore***, 916 A.2d 1128, 1140 (Pa. Super. 2007) (*en banc*). To the contrary, it is the appellant's duty to present arguments that are sufficiently developed for our review. ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007). Thus, waiver "results when an appellant fails to properly develop an issue or cite to legal authority to support h[er] contention in his appellate brief." ***Commonwealth v. Cox***, 72 A.3d 719, 721 n.3 (Pa. Super. 2013) (citations omitted).[5]

*Issue 5: Husband's Taxes & Self-employment*

Appellant's undeveloped argument of this issue consists of the following two sentences:

> Regarding the tax issue, there was no evidence that the taxes were the responsibility of [Appellant]. The exhibit entered regarding the taxes show [Husband] had asserted such.

---

[5] There is a 20-day difference between the date stated by the Master and the correct date. Noting that the parties were married for nearly 20 years, the trial court explained that the divorce complaint "was filed on May 23, 2019[, and a]ll filings and testimony from the Master's hearing support a date of separation of May 22, 2019, not May 2, 2019." TCO at 5 (citation omitted). The trial court stated it was "unaware of whether this is a typo, but this date of separation change would be *de minimus*." ***Id.*** Likewise, Husband states that the error "is *de minimus* and did not affect the [equitable distribution] award." Husband's Brief at 29. He adds that Appellant "fails to cite any point in the record to support this assertion. On the contrary, the record presents findings well supported by the [] testimony and evidence." ***Id.*** at 29-30.

Appellant's Brief at 17. Appellant's fifth issue is waived for the reasons expressed above regarding Appellant's fourth issue.[6]

### Issue 6: Effect of Husband's Death

This issue is also waived. Appellant questions "[w]hether the matter should have been remanded to the Master for a new equitable distribution order after Husband passed away on July 25, 2023?" Appellant's Brief at 5-6. Appellant does not develop this argument in the context of equitable distribution. *See id.* at 16-19; *Commonwealth v. Bullock*, 948 A.3d 818, 823 (Pa. Super. 2008) (finding appellant abandoned his claim and reiterating that issues identified on appeal but not properly developed are waived).[7] As Appellant has abandoned her sixth issue, it is waived.

### Issue 7: Marital Residence

In her final issue, Appellant claims she was entitled to receive the marital residence. Appellant recognizes that the trial court must consider the eleven factors enumerated in 23 Pa.C.S. § 3502(a). Appellant's Brief at 17. She asserts the "factors of greatest relevance" as follows:

---

[6] The trial court rejected this issue because Appellant "stated that she was the sole owner of the business for which Husband was a contractor. [Appellant] provided no evidence that any tax debt existed at the time the parties separated." TCO at 6.

[7] We addressed the effect of Husband's death in our discussion of the validity of the divorce action. To the extent Appellant's sixth issue is encompassed in her first three issues, it is resolved.

(3) The age of [Appellant] is 62 years old. Her health is fragile. She is disabled. Her income is limited. She has no assets other than the home and her car. She cannot live anywhere else as affordably as she can in her house. [Husband] is deceased. He has no needs. Even before he was deceased, his needs were all taken care of by the Commonwealth of Pennsylvania, Medicaid, Social Security and his pension.

(5) [Appellant] has no opportunity to acquire other assets. [Husband] did not, either, but since he has died, he has no need of other assets.

(7) [Appellant] provided the funding for the purchase of the home. From 2004 to 2019, [Appellant] that [*sic*] [Husband] had not contributed to the home except for some construction. That construction required her to expend further sums to complete or correct the work. She has preserved the home without any contribution from [Husband] since 2019.

(9) The home is the standard of living established during the marriage. Prior to his decease, [*sic*] [Husband]'s standard of living was limited by his disease and his need for in home caretakers. [Appellant]'s standard of living is the home — which she cannot maintain if she is forced to sell the home.

(10) The economic circumstances of the parties when the division is to become effective is: [Appellant] will have nowhere to live and will be homeless while [Husband] requires no economic support. It is possible there may be debts due for which his estate must pay. However, there is no evidence of such on the record.

(10.1) The Federal and State tax ramifications are: the taxing authorities will enter their claims and any proceeds distributed to the Estate will go to pay taxes. It is unfair to make [Appellant] homeless just to pay taxes of the deceased.

When all of these factors are considered, how is it equitable to award any portion of the home to [Husband] or to direct the home to be sold?

If the Court determines there is an economic portion of the home which may be preserved for [Husband]'s estate, then the Court should use its powers set forth in 23 Pa.C.S. [§] 3502(b)[, which] provides the Court may impose a lien or charge upon the property of a party. The Court should place the lien on the real property.

When [Appellant] vacates the home or dies, then the lien would be satisfied.

Finally, the award of money from the sale of the house might make sense when [Husband] was alive to enjoy it. But what about after he died? Given he died while the Exceptions were pending, the matter should have been remanded to the Master for further proceedings.

If the other relief is not granted, then the matter should be remanded to consider the effect of his death.

Appellant's Brief at 17-19.

Husband refutes Appellant's claims. He argues:

[Appellant] continues to falsely claim she provided the funding for the home. By her own admission, [Appellant] admitted at trial that it is a marital asset, as it was purchased during the marriage. [N.T., 2/1/23, at 63, 68]. [Appellant] also asserts … that the money used for the purchase came from her retirement funds, but has failed to provide such evidence to support this, because none exists.

The only evidence [Appellant] provided was by her own testimony at the February 1, 2023 evidentiary hearing. There, [Appellant] testified that she cashed out a 401(k) to purchase the residence and admitted that the one document she did provide in discovery in support of this claim — a 2004 IRA contribution information form — contained no information demonstrating that she had withdrawn any funds. [*Id.* at 64-65]. In contrast, by [Appellant's] own admission in her brief, Husband provided sweat equity through improvements and renovations to the home over the course of the marriage. [Appellant's Brief at] 18. The [Master] properly considered these facts in the[] issuance of an equitable distribution award.

The trial court properly disregarded [Appellant's] assertion that Husband owed at least $100,000 in unpaid taxes. [Appellant] failed to offer any competent evidence to support this claim. …

Furthermore, [Appellant's] assertion that she will be homeless or without financial means to move to a new residence is without merit. [Appellant indicated] she cannot afford the marital residence. [N.T., 2/1/23, at 110]. The marital home was appraised for $275,000 on May 24, 2021. [*Id.* at 22-23, 68].

Pursuant to the existing distribution scheme, [Appellant] will receive half of the net equity in the residence[, Master's Report, 5/8/23, at 4,] well over $100,000. Contrary to what [Appellant] alleges, she will not be homeless, but will have funds sufficient to maintain the standard of living during the marriage.

Husband's Brief at 30-32.

The trial court likewise opined there was no evidence "that Husband's share of proceeds of the sale of the marital residence will go to the IRS." TCO at 6. The trial court remarked:

The parties were married for almost 20 years, and the home was purchased during the parties' marriage in 2004. The ... award of the proceeds from the sale of the marital residence [is] appropriate. As stated previously, the [trial c]ourt finds that Husband's death subsequent to the equitable distribution hearing does not change this award.

*Id.* at 6-7.

The record reveals no error. The trial court allowed Appellant to remain in the marital residence pending sale, but otherwise adopted the Master's report. Order, 9/15/23 (single page). "Consistent with our precedent ... the trial court was free to give weight to the master's report." *Snyder v. Snyder*, 275 A.3d 968, 980 (Pa. Super. 2022). Notably, the Master specified, "in consideration of the factors for equitable distribution set forth in 23 Pa.C.S. § 3502, the [] equalizing award of equitable distribution is appropriate." Master's Report, 5/8/23, at 7; *id.* at 9 (concluding "the parties were on a relatively level 'playing field'"). For example, the Master found Appellant "testified to health concerns of her own, which were considered," and "[b]oth

parties are dependent on Social Security at this time."[8] *Id.* at 4. The Master did not recommend alimony or counsel fees for either party. *Id.* at 11.

As indicated above, the marital estate consists of the marital residence, a GMC truck, household goods, and marital debt. Order, 9/15/23, at 1-2. Husband submitted an appraisal, without objection, which valued the marital residence at $275,000. N.T., 2/1/23, at 22-23 (Exhibit A). As the marital residence constitutes most of the marital estate, the Master properly exercised discretion in recommending its sale to effectuate equitable distribution. Likewise, the trial court properly exercised discretion in adopting the Master's report (with slight modification permitting Appellant to remain in the marital residence pending sale).

Appellant would have this Court "substitute h[er] viewpoint for the credibility findings of the master and the trial court." *Snyder*, 275 A.3d at 980. We reiterate that we must defer to the factfinder's discretion. *Id.* (citation omitted). Thus, there is no merit to Appellant's issue regarding the award of the marital residence.

For the above reasons, Appellant's issues do not merit relief. We therefore affirm the orders denying Appellant's exceptions and resolving the parties' economic claims.

Orders affirmed.

---

[8] Ms. Angotti testified that Husband "lives off Social Security basically," while Appellant testified that she supported herself on Social Security. N.T., 2/1/23, at 14, 56.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 07/30/2024